34374. L. R. SAMS COMPANY INCORPORATED *v.*
WATERS.

Decided January 28, 1953.

*Wheeler, Robinson & Thurmond,* for plaintiff in error.
*Telford, Wayne & Smith,* contra.

Felton, J. If Waters by the exercise of ordinary care could have avoided the consequences to himself caused by the negligence of L. R. Sams Company, (if in fact it was negligent), he is not entitled to recover. Code, § 105-603. We think that the following testimony shows that Waters, by the exercise of ordinary care, could have prevented the collision out of which the alleged damages arose. L. R. Sams testified in part as follows: "On the occasion when this collision occurred, the [plaintiff in error's] automobile was parked right up next to the building that we own on South Main Street. The building is fifteen feet back from the curb, and the old sidewalk was about half that distance, so we could leave ample space to the sidewalk north and south, and have room in addition to that for the car to park. The car was parked against the wall of the building, right next to the platform and the driveway—private driveway. I looked both ways carefully when I started out. You ask what I observed coming from toward the depot on South Main Street. I first looked toward the square—towards town. There was no car in that distance

from the red light, the school building there, all the way down. I presume the light was on. Then I looked toward the south. There was no traffic in the north, but when I looked south I saw this car—just the top of it, coming over the hill from toward the Southern Depot. The point on Main Street where I saw the car would be about one hundred fifty feet beyond High Street before I could see the top of the car. Now, I have made a careful check since then and even this morning, and you can see all of the car, the wheels and all, at the Central Baptist Church from in front of my warehouse there. You can see every part of the car, but I first saw just the top of his vehicle coming up over the street, and I figured that I had all the time that anybody could possibly want. When I saw the top of the car I would say that it was one hundred fifty to two hundred feet on the other side of High Street, and in respect to Central Baptist Church, as I recall and as Mr. Higgins just stated, is on just this side of High Street. The street crosses just the other side of Central Church, that would be two and a half blocks, three hundred fifty or four hundred yards from where I was. Then I started to come toward town and I started very slowly, after having looked both ways, and made my calculation, gradually pulled in the street and began to make the turn. Of course I came into the street from the alley, just like any one would drive in a street from the alley. I drove in the street off the sidewalk. I was going to proceed north, and I first steered into the lane of traffic on the south side of Main Street. I had to. I was working my way toward the other side because I naturally would travel to the right, going toward town, and I had got just about the middle of the street, or slightly beyond in an angle, probably three-fourths turned, and I looked again up the street. In fact, I first heard the horn blow and I turned around, and as soon as I heard a sound I put the brakes on and I was traveling probably three or four miles an hour, I don't know but something like that, and I slapped on the brakes and come to a perfect stop and sitting in the car and looked around and saw the car a distance, I would say of fifteen or twenty feet from the time he first blowed his horn, and then he plowed right into me, and he could have turned as much as eighteen inches to the right

and missed it entirely, as there was no car parked on the right-hand side. I think by the police measurements it was actually a distance of fourteen feet that he had space there that he could have used to pass my car on the right-hand side coming this way. As to the left-hand side of my car, well, perhaps the street is forty feet wide and I don't know exactly the length of my car, but it was at an angle in the street—I would say that you occupy probably fifteen feet of that forty feet and he would have had fourteen feet approximately on the other side. You ask if he turned to the right or to the left. He came directly into me, and I was dumbfounded sitting in the car watching him as he came down like he was wholly unconcerned about what he was doing, or did not know what he was doing, apparently, and did not deviate as I could see it one inch from the direct course he was following. The right of the car I was in was struck, beginning at the right front door and the right fender."

G. A. Higgins testified in part as follows: "At the moment I first saw Mr. Waters' vehicle, Mr. Sams was coming around out of the driveway. He started out about the time the car came over the hill there. The distance from where Mr. Sams was up to where Mr. Waters' automobile was, well, it would be about a block. From the time he come off of the side—off out of his driveway to the street, the front of his car come out, I imagine the Plymouth was about one block. You ask if I observed anything about the speed. Mr. Sams was coming out very slow—I mean it was not going very fast. . . Coming from Central Church down this way, it is down grade. There was not any slackening or increasing of speed of Waters' vehicle coming down the hill as I could tell until he got about as close as from here to the wall when he first hit the brakes. He did not completely lock it when he hit the brakes. He hit the brakes and gradually pulled it down until it hit. From here to the wall I would judge to be about twenty or thirty feet." Mr. Higgins also testified substantially the same as Mr. Sams concerning the clearance between the Sams vehicle and the curb of the street and whether Mr. Waters attempted to go around the Sams vehicle.

Clifford B. Waters, the defendant in error, testified in part:

"Mr. Sams, when I first saw him was coming out of that driveway into Main Street, making a left turn. I was on the right side of the road, coming north. I thought he was coming up on the sidewalk and stop and wait until I got through, but he did not, he came right on and I hit my brakes. I was only twelve or fourteen feet of him when I first realized that he was not going to stop. . . I was up half way in that block when I first noticed his car coming off the sidewalk—between Central Baptist Church and down there where he was. I did not increase my speed coming down the hill. I would say, as I told the cops, around thirty or thirty-five miles an hour was my rate of speed when I got down there to the hollow. . . I was up this side of Central Church somewhere when I first saw him. Central Church is about a block and a half from his warehouse, I think. While he was traveling from the curb out to where I had the wreck, I came the block and a half. . . You ask if it isn't true that when I got to the place where the collision occurred, if I had turned my automobile, say two feet to the right, I could have gone around him and missed him— gone between him and the curb. No, sir, I don't think I could have missed him. As to the clearance between Mr. Sams' car, the front of it, the part I hit and the curb over there on the east side of the street, there was around twelve or fourteen feet between my car and the curb. You ask what would have prevented me from going through that space, and if there was another automobile parked there. I don't remember. I probably could have tried to have missed him. I tried, yes. I mean but I might have turned the car off and he would have come right on into me anyhow, regardless of which way I went. I tried to miss him—put on brakes and tried to stop. I tried to stop and blowed the horn to try to keep him from pulling out in front of me. I slid my car about three feet. . . If I had started putting on my brakes up there on top of the hill, I could have stopped. I saw Mr. Sams' car when I was up there around Central Church. He had not pulled into Main Street—he was coming into Main Street when I first saw him—coming up from where he cranked up, up into Main Street. I saw him coming into Main Street when I was up this side of Central Church. . . You ask if from where I

was at that point I saw he had already pulled into Main Street and saw which way he was preparing to turn, no, I did not say he had already pulled into Main Street. I said he was coming in Main. You ask if I saw him coming into Main Street if I knew that he had to either go one way or the other, north or south, and if I saw which way his car was turning, whether going in the north-bound lane or south-bound. I did when he came off the sidewalk. He made a left turn. . . You ask if from the time I saw Mr. Sams' car up there at the church while I was coming on down that grade, if I changed my speed any before I put on my brakes just before the accident. No, sir, I came at the same speed right down the hill to where I saw he was not going to stop, and then I changed my speed. I did not slacken my speed on the grade until I saw that he was not going to stop, because I thought he was going to stop. You ask if actually Mr. Sams had only driven about twenty or twenty-five feet out in the street while I had been driving from all the way up to Central Church. Yes, I drove from up there in that block that the church is in while he was driving."

Whether the evidence showed that, by the exercise of ordinary care, the defendant in error could have passed to the right of the Sams automobile and avoided the collision—it showed that Sams pulled out of the driveway into Main Street and moved slowly but continuously into the north-bound lane of traffic; that Waters saw Sams so pulling into Main Street when he was still a block to a block and a half away; that he did not slacken his speed of thirty to thirty-five miles per hour until he was twelve or fourteen feet from the Sams automobile. We think it sufficient without further elaboration to say that Waters by exercising ordinary care under the circumstances could have avoided the collision, and that his failure to exercise ordinary care constituted negligence which proximately caused the collision.

As the alleged errors complained of in the special grounds of the motion for new trial will not likely occur in a new trial, such grounds are not ruled on.

The court erred in denying the motion for a new trial.

*Judgment reversed. Sutton, C. J., and Worrill, J., concur.*